Filed 9/10/24  In re S.R. CA2/8
Opinion following rehearing on court's own motion

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re S.R., a Person Coming Under the Juvenile Court Law. | B332087 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.S.,<br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 19LJJP00701A |
| In re PRINCETON N. et al., Persons Coming Under the Juvenile Court Law. | B332981, B333986 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br>S.S.,<br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 19LJJP00701B, C |

APPEALS from orders of the Superior Court of Los Angeles County.  Stephanie M. Davis, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

These consolidated appeals involve siblings Princeton N. and S.N. and their half sibling S.R. (together, the children). S.S. (mother) is mother to all three. The father of Princeton N. and S.N. is T.B. (N. father). S.R.'s father is deceased.

Mother challenges the juvenile court's order terminating her parental rights as to Princeton N. and S.N. and its legal guardianship order as to S.R. Her appeals raise only one issue: whether the juvenile court properly concluded it had no reason to believe any of the children is an Indian[1] child within the meaning of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) before entering the challenged orders. This is the second time we have considered ICWA compliance in this case. (See *In re S.R.* (Oct. 12, 2021, B307302) [nonpub. opn.].) We again find no error.

## BACKGROUND

We limit our recitation of the facts to those relevant to the matter before the court.

Though S.R. was also the subject of prior dependency proceedings, this case began in 2019. In the detention report, mother and N. father claimed Indian heritage. They did not know which tribes but said they would obtain more information. (*In re S.R., supra*, B307302.)

_____

[1]      We use the term "Indian" as it is defined in section 1903 of title 25 of the United States Code.

Mother completed but refused to sign an ICWA-020 parental notification of Indian status form. On the form she wrote she might have " 'Cherokee and other' " Indian affiliations, " 'but not sure of the tribe.' " (*In re S.R., supra*, B307302.) When the investigator from the Los Angeles County Department of Children and Family Services (Department) asked mother for information about maternal grandparents as part of the Department's inquiry, mother declined to provide any. (*Ibid.*)

N. father did not file an ICWA-020 form. (*In re S.R., supra*, B307302.) However, he told a Department social worker he was Native American: " 'Chief, Cheyenne, Cherokee.' " (*Ibid.*) Mother and father thereafter refused to cooperate with the Department in its investigation of their claimed Indian ancestry. (*Ibid.*)

With the limited information it had, the Department sent notices for the three children to three Cherokee Tribes, the Secretary of the Interior, and the Bureau of Indian Affairs (BIA). For Princeton N. and S.N., based on N. father's claims, the Department also sent notices to the Cheyenne Tribes. The notices listed names and birth dates for mother or mother and N. father, as applicable. They did not list any information for any other relatives. (*In re S.R., supra*, B307302.)

Two tribes responded to the Department's notices, the Cheyenne River Sioux and the Eastern Band of Cherokee Indians. The former reported that neither mother, N. father, nor S.N. was enrolled in the tribe. The latter reported that, based on the information provided, none of the children was registered or eligible to register as tribe members. (*In re S.R., supra*, B307302.)

In August 2020, at the dispositional stage of the case, the juvenile court concluded ICWA did not apply. Mother and

N. father both appealed that decision and we affirmed. (*In re S.R., supra*, B307302.)

Subsequent to the August 2020 ICWA finding, the Department continued its efforts to ascertain whether any of the children has Indian ancestry. In January 2021, the Department sought additional information from mother and N. father, but "[t]he parents refused to acknowledge and reported that they would not provide [the Department] with any information, including names of any tribes or the names of anyone who may have information regarding whether or not they have Native American Ancestry." This was consistent with the typical futility of the Department attempting to communicate with the parents throughout the case. As the juvenile court noted at a hearing in October 2021, "every time the social worker spoke to the mother and the [N.] father . . . , [the Department] and [its] social workers have been met with hostility and aggressiveness with vulgar language and with complete and utter disrespect." This continued in April 2022, when the Department reported N. father behaving "nonsensical[ly]" and refusing to help the Department contact mother, who had broken off communication with the Department.

In October 2022, the Department again reported that ICWA did not apply and the parents had not been available for further inquiry. Around this time, S.R. was moved to the home of maternal aunt Gloria A., who was being considered for legal guardianship, while the other children remained in foster care. The juvenile court ordered an inquiry of all maternal and paternal relatives and for the Department to make "one last" attempt to interview mother and N. father about Indian ancestry.

In February 2023, Gloria A. told the Department her side of the family (maternal) had possible Indian ancestry but she did

not know which tribe or through which ancestor. She promised to investigate herself. The social worker requested contact information for those with whom Gloria A. would inquire but Gloria A. refused, explaining the maternal great-aunt she intended to ask "hardly answers her telephone" and Gloria A. did not have contact information for N. father, his relatives, or any person related to S.R.'s father.

The same day, the social worker spoke with mother. Mother refused to give the social worker any information, including any contact information for S.R.'s father's relatives. The social worker also spoke with N. father, who denied knowledge of any Indian ancestry.

At a hearing a few days later, the juvenile court noted the Department's additional ICWA inquiry and asked counsel if they wanted to be heard on the matter. None did, and the court found no reason to believe any of the children have Indian ancestry.

Yet the Department thereafter continued its ICWA inquiry. In July 2023, it again asked mother about Indian ancestry, and she again refused to answer. In July and August 2023, the Department tried to reach N. father by phone "to no avail." But in July 2023, maternal aunt Gloria A. told the Department she believed her ancestors were from the Cherokee and Geechee Tribes. She provided names of some of her relatives: maternal great-aunts Beatrice S. and Gloria S., maternal great-great-aunt Mary Louis R.R., and maternal great-great-great-aunt Beatrice R. She also provided birth dates for Beatrice S. and Mary Louis R.R. Again, maternal aunt told the Department she would make further inquiry with a maternal great-aunt (specified this time as Gloria S.) herself.

While the Department was unable to contact maternal great-aunt Gloria S. directly, it learned from maternal cousin

Angel S. that Gloria S. had previously mentioned maternal great-aunt Beatrice S. had Indian ancestry and believed her family was part of the Cherokee Tribe. However, maternal aunt Gloria A. cast doubt on that report. Gloria A. had managed to speak to Gloria S. and Gloria S. stated she was unsure about any Indian heritage. Gloria A. promised to reach out to another relative and text the Department if she obtained any additional information. She later confirmed she was unable to obtain any additional information.

The Department's direct contact with three other relatives yielded no information of use.

S.R. was never able to contact any of her father's relatives and simply repeated what maternal aunt Gloria A. had said about Indian heritage on mother's side—that it was possible but uncertain and she could not identify a tribe.

In August 2023, the Department submitted it had complied with its ICWA inquiry obligations. Of the three possible tribal affiliations the family had suggested, the Department concluded Cheyenne and Cherokee were ruled out by the responses it received to its 2019 notices to the tribes. And the Geechee Tribe is not federally recognized, rendering it irrelevant to the Department's ICWA compliance obligations. Based on this record, the juvenile court found the Department had complied with ICWA as to S.R. and appointed maternal aunt Gloria A. to be S.R.'s legal guardian.

In December 2023, the juvenile court made the same findings of ICWA compliance as to Princeton N. and S.N. and terminated parental rights.

Mother, who had persistently refused to cooperate in the Department's efforts to conduct its ICWA inquiry, appealed these rulings to contend the Department's inquiry was inadequate.

6

On August 14, 2024, we filed an opinion affirming the juvenile court's decision based on mother's failure to even attempt to show any prejudice as a result of the decision. This was a sufficient basis for affirmance under our decision in *In re M.M.* (2022) 81 Cal.App.5th 61, 71, in which we held some showing of prejudice was necessary before we would reverse a juvenile court order for inadequate ICWA inquiry.

A few days later, our Supreme Court filed *Dezi C. v. Angelica A.* (Aug. 19, 2024, S275578) ___ Cal.5th ___ [2024 Cal. Lexis 4634] (*Dezi C.*), which excused a showing of prejudice where there has been an inadequate ICWA inquiry. In doing so, it disapproved of the prejudice analysis in *In re M.M.*, *supra*, 81 Cal.App.5th 61. (*Dezi C.*, at p. *54, fn. 18.)

Both parties filed petitions for rehearing. We deny those petitions because the record still supports affirmance for the reasons stated in this modified opinion.

## DISCUSSION

### 1. Applicable ICWA Law and Standard of Review

In involuntary state court proceedings concerning child custody, such as these dependency proceedings, ICWA requires notice to the relevant Indian tribe "where the court knows or has reason to know that an Indian child is involved." (25 U.S.C. § 1912(a).) It is incumbent upon the court administering such a proceeding to inquire whether the subject child is an Indian child. The scope of the duty on the court, as well as certain participants in the proceeding (including county welfare departments, like the Department), is defined by federal regulations and related state law. (See, e.g., 25 C.F.R. § 23.107 (2024); Welf. & Inst. Code,[2]

---

[2] Undesignated statutory references are to the Welfare and Institutions Code.

§ 224.2; Cal. Rules of Court, rule 5.481.)

We describe the duty of inquiry as having up to three "phases" in any given case. The first phase—"initial inquiry"—applies in every case. In general terms, initial inquiry requires the court and county welfare departments like the Department to ask certain persons about the child's possible Indian ancestry. (See § 224.2, subds. (a), (b), (c); *In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

Where "initial inquiry" gives "reason to believe" the child is an Indian child, but there is insufficient information to make a definitive determination, the second phase—"further inquiry"—comes into play. (§ 224.2, subd. (e)(2).) Further inquiry requires more robust investigation into possible Indian ancestry, including interviewing the parents and extended family members, contacting the BIA, and contacting the relevant tribe or tribes. (See *ibid.*; *In re D.F.*, *supra*, 55 Cal.App.5th at p. 566.) In contacting the tribe or tribes, the county welfare department is obligated in this phase to "shar[e] information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(c).)

Where, as a result of further inquiry or otherwise, the juvenile court has "reason to know" a child is an Indian child, the third phase is triggered. This phase requires formal notice to be sent to the applicable tribe or tribes so as to facilitate their participation in the proceedings. (§ 224.3, subd. (a)(1); *In re D.F.*, *supra*, 55 Cal.App.5th at p. 568.)

"The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) The court and

county welfare department "have an affirmative and continuing duty" to inquire whether a child for whom a petition under section 300 may be or has been filed may be an Indian child. (§ 224.2, subd. (a).)

Mother claims error in both the first and second phases of inquiry. She complains the Department failed to satisfy its obligations under Welfare and Institutions Code section 224.2, subdivision (b) to inquire with the children's statutorily defined "extended family members." (*Ibid*.; see also 25 U.S.C. § 1903(2); § 224.1, subd. (c).) And she complains the Department failed to satisfy its obligations under section 224.2, subdivision (e) to further inquire based on "information suggest[ing] eligibility in the Cherokee tribe" it obtained from extended family members it did interview.

The juvenile court's finding that ICWA does not apply implies that (a) neither the Department nor the court had a reason to know or believe the child was an Indian child; and (b) the Department fulfilled its duty of inquiry. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; see also § 224.2, subd. (i)(2).) Some courts review both such findings for substantial evidence (see *ibid*.), while others review the former for substantial evidence and the latter for abuse of discretion (see *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004, disapproved on another ground in *Dezi C., supra*, ___ Cal.5th at p. ___ [2024 Cal. Lexis 4634, at p. *54, fn. 18].) While expressly reserving on what standard of review applies to these findings, the *Dezi C.* court "note[d] . . . that the juvenile court's fact-specific determination that an inquiry is adequate, proper, and fully diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C., supra*, at p. ___ [2024 Cal. Lexis 4634, at p. *32].) " 'A [juvenile] court abuses its

9

discretion only when " ' "[it] has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' "  [Citation.]  But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " ' "  (*In re Ezequiel G.*, at pp. 1008-1009.)

## 2.    Analysis

Applying a deferential standard of review, we affirm the juvenile court's finding that the ICWA does not apply.  The record reflects that the Department made substantial and persistent efforts to ascertain whether the children were Indian children from the outset of the case, and the juvenile court was attentive to those efforts and encouraged them, while recognizing the challenges the Department faced in obtaining information from the family.

Mother's claimed initial inquiry error centers on the Department's reliance on maternal aunt, Gloria A., to interface with certain other extended family members instead of making the inquiry directly with them.

The *Dezi C.* court confirmed that a county welfare department's failure to ask "every possible extended family member" about possible Indian ancestry is not error.  (*Dezi C.*, *supra*, ___ Cal.5th at p. ___ [2024 Cal. Lexis 4634, at p. *32].)  Rather, " '[t]he operative concept is those people who are reasonably available to help the [Department] with its investigation into whether the child has any potential Indian ancestry should be asked.' "  (*Ibid*.)

Here, the juvenile court did not abuse its discretion in concluding the Department had acted with adequate diligence to interview extended family members.  Though the Department asked Gloria A. for the contact information of at least one person

10

she asked about Indian heritage, Gloria A. declined to share it. The Department also asked her for contact information for other relatives that she was unable to provide. On a different occasion, Gloria A. offered to contact another extended family member about possible Indian ancestry and text the Department if she obtained any additional information. Two weeks later, she reported she did not obtain any additional information.

The Department did not rely exclusively on Gloria A. to contact family members, however. It also asked four maternal cousins, and attempted to ask, albeit unsuccessfully, paternal grandmother, paternal great-aunt, and the mother of a half sibling.

On the record before us, it was not an abuse of discretion for the juvenile court to find the Department satisfied its initial inquiry obligation by relying, in part, on Gloria A. to communicate with other family members. First, the record supports the inference that Gloria A. insisted on reaching out to these family members herself and would not share contact information with the Department. Second, in the context of a case where the parents were openly hostile to and refused to assist the Department in making its inquiry, it is understandable that the Department took help where it could get it. "Where . . . a parent largely fails . . . to provide names and contact information for extended family members, [the Department's] ability to conduct an exhaustive ICWA inquiry necessarily is constrained." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082.) "[W]e cannot ask the [Department] to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*Ibid.*)

Mother does not contend the Department had contact with, or contact information for, extended family members with whom

it failed to inquire. Under the circumstances of this case, and on the record provided, we cannot say the juvenile court acted arbitrarily, capriciously, or irrationally in determining that the Department had done enough. The court had pushed the Department to make additional efforts to inquire, the Department made additional efforts, and it came up with nothing more than speculation about possible Cherokee heritage—the same speculation the family had offered from the beginning of the case but was never substantiated. "The juvenile court has discretion to determine when enough is enough." (*In re H.B.* (2023) 92 Cal.App.5th 711, 721.)

Regarding the duty of further inquiry, mother fails to show error. She contends the Department had a duty to further inquire based on statements from various maternal family members in 2023 that there was a possibility of some affiliation with the Cherokee Tribe. However, the Department had already, in 2019, contacted the three Cherokee Tribes, the Secretary of the Interior, and the BIA based on mother's claim of possible Cherokee heritage. Additionally, the Department made efforts to interview the parents and family members and obtained biographical information about some of them. (§ 224.2, subd. (e)(2)(A), § 224.3, subd. (a)(5)(C).) However, the Department was limited in its ability to gather information due to lack of cooperation from the family. Ultimately, the relevant information provided did nothing more but echo what mother claimed in her form ICWA-020—that she might have Cherokee heritage but did not know the tribe or anything more. The only new information mother observes the Department had was the names of four, and birth dates of two, family members that might have been somehow connected to a Cherokee Tribe (or the

12

nonfederally recognized Geechee Tribe), and a vague statement that some maternal relatives were from "DC and Texas."

Mother fails to show that not re-contacting the same Cherokee Tribes with this additional information violated the Department's duty of further inquiry.  She does not assert a violation of the Department's obligation to share "information identified by the tribe as necessary for the tribe to make a membership or eligibility determination," which would constitute a violation of section 224.2, subdivision (e)(2)(C).  Nor does she cite authority that the Department was obligated to revisit with the tribes possible eligibility for membership based on information of this nature.  It is simply unexplained how the continued unconfirmed, and apparently unconfirmable, rumors of some family connection to a Cherokee Tribe were sufficiently pertinent to the children's possible Indian status warranted asking the same tribes about eligibility again.  (Cf. *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1469 [" 'family lore' " is not " 'reason to know a child would fall under [ICWA]' ".)

The only case mother cites as part of her discussion of the adequacy of the Department's further inquiry is *In re E.C.* (2022) 85 Cal.App.5th 123.  That case found an inadequate further inquiry where the county welfare department had information that various family members "may be enrolled members of the Apache tribe" and there was no record the department ever contacted that tribe.  (*Id.* at p. 134.)  Elsewhere, she discusses *In re N.G.* (2018) 27 Cal.App.5th 474.  In that case, the court found an inadequate further inquiry where the department contacted various tribes the father listed on his form ICWA-020, which did not include any Cherokee Tribe, but did not contact any Cherokee Tribe when its investigation uncovered information that paternal relatives were members.  (*Id.* at pp. 478-479.)

13

Here, the Department did contact each federally recognized tribe in which it was suggested the children might be eligible for membership.  The tribes did not find eligibility.  It then received more speculative information about some undefined family connection to the same tribes and did not re-inquire.  Under the circumstances, we cannot say the juvenile court's implicit determination that the Department's further inquiry was duly diligent " ' "exceeded the bounds of reason." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

## DISPOSITION

The juvenile court's orders, including its finding with respect to the children's Indian heritage, are affirmed.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.